(165 App. Div. 481)

RIPLEY et al. v. GUARANTY TRUST CO. OF NEW YORK et al.  (No. 6500.)

(Supreme Court, Appellate Division, First Department.  December 31, 1914.)

1. POWERS (§ 36*)—CONSTRUCTION—EXECUTION.

The validity of provisions of a will of real or personal property, executing a power of appointment contained in an earlier instrument, must be tested by reading the provisions of the will into the instrument which created the power.

[Ed. Note.—For other cases, see Powers, Cent. Dig. §§ 137–149, 155; Dec. Dig. § 36.*]

2. WILLS (§ 81*) — VALIDITY — INTERMINGLED AND INTERDEPENDENT PROVISIONS.

When the several parts of a will are so intermingled or interdependent that a bad provision cannot be separated from the rest of the will, the whole must fall; but if it is possible to cut out the invalid provisions, so as to leave intact valid parts and preserve the testator's general plan, such construction will be adopted as will prevent intestacy, either partial or total, as the case may be.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 201, 202; Dec. Dig. § 81.*]

3. WILLS (§ 680*)—TESTAMENTARY TRUST—VALIDITY—PERPETUITIES.

Testator, having a wife and one child, an infant, who was his only surviving child, by the residuary clause of his will bequeathed his property to his executors, as trustees, during the life of the widow, with a proviso that half of it should be paid over to the child if he lived to reach 30 years of age, the other half remaining in the trustees for the widow's benefit during the remainder of her life, she to enjoy the whole income during the child's infancy, but after he arrived at 21 he was to receive one-quarter of the income, one-half after reaching 25, the balance in each case to go to the widow, and finally, when the child became 30, he should receive half of the fund.  The eleventh subdivision of such clause declared that on the death of the widow the trustees should hold the remaining moiety in trust for all or any of testator's child or children who, being sons, attained the age of 21, or, being a daughter or daughters, attained that age or married, if more than one in equal shares, but subject to the trusts and powers previously declared.  *Held* that, while such latter subdivision was void as an illegal suspension of alienation, the balance was valid as creating a single trust term limited on the life of the widow, subject to terminate as to one-half of the fund when the child arrived at 30 years of age, and terminating as to the whole on the death of the widow.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1594–1598; Dec. Dig. § 680.*]

4. PERPETUITIES (§ 6*)—SUSPENSION OF ALIENATION.

A testator may suspend the absolute power of alienation for two selected lives in being at the creation of the estate, and during that time may make such disposition of the annual income among as many persons as he sees fit.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. §§ 4–47, 49–53, 56; Dec. Dig. § 6.*]

Laughlin and Dowling, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Alice L. Ripley and others, as executors, against the Guaranty Trust Company of New York, impleaded with Alice L. Ripley and Harry D. D. Ripley, an infant, etc. From an interlocutory judgment in favor of plaintiffs, Harry D. D. Ripley appeals. Affirmed.

See, also, 149 N. Y. Supp. 1108.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, SCOTT, and DOWLING, JJ.

Richard Cummins, of New York City, guardian ad litem, for appellant.

Samuel B. Clarke, of New York City (Roger H. Clarke, of New York City, on the brief), for respondents.

SCOTT, J. The sole question of law presented by this appeal is as to the validity in whole or part of the attempted disposition in the will of Harry Dillon Ripley of the fund which he had assigned in trust to the Knickerbocker Trust Company and Sidney Dillon Ripley, as trustees, and which is now held by the Guaranty Trust Company as trustee. The facts have been so fully and clearly stated by Mr. Justice LAUGHLIN that it will be unnecessary to recapitulate them, and we can accordingly proceed at once to the consideration of the will in controversy. We pass, without deciding, the question whether or not the decree in the Surrogate's Court, referred to by Mr. Justice LAUGHLIN, is res adjudicata so far as concerns the question here, since we are not agreed on that point, and proceed to consider the validity of the will de novo.

The objection urged against the will is that, so far as it relates to the fund involved in this proceeding, it undertakes to suspend the absolute ownership of the personal property, of which the trust fund consists, for more than two lives in being at the date of the instrument containing the limitation, in violation of what is commonly known as the statute against perpetuities.

[1] It is perfectly well settled that, with regard to personal property, as well as with regard to real estate, the validity of the provisions of a will executing a power of appointment contained in an earlier instrument must be tested by reading the provisions of the will into the instrument which created the power. Fargo v. Squiers, 154 N. Y. 250–259, 48 N. E. 509. So reading the deed of trust and the will conjointly, it is apparent that one of the lives mentioned in the statute was that of Harry Dillon Ripley himself, the creator of the trust. This left it open to him to suspend, by his will, the absolute ownership of the fund for not more than one life in being at the time the deed of trust was executed. This one life, as the will was drawn, was that of his wife, Alice Louisa Ripley, for whose benefit the fund in controversy, with other property, was given to the executors as trustees. It is conceded that this provision for the testator's widow, if standing alone, would be unimpeachable, and would not contravene the statute against perpetuities. The argument against the entire invalidity of the ninth clause of the will rests upon the invalidity of

other provisions contained in that clause, which, as it is considered by the appellant, constitute so important a part of the testator's scheme of disposition that their invalidity necessarily condemns the whole clause, including the trust attempted to be created for the benefit of the widow. The fundamental question, therefore, which we are called upon to decide, is as to whether the valid trust for the life of the widow is so distinct and separable from the other and concededly invalid provisions of the will that it can be upheld.

[2] The rule to be followed in such a case is thus declared in Kalish v. Kalish, 166 N. Y. 368, 59 N. E. 917:

"This necessity [of deciding whether as to certain wills the void provisions may be excised] has led to the rule, which is now firmly established in this state, that when the several parts of a will are so intermingled or interdependent that the bad cannot be separated from the good, the will must fail altogether; but when it is possible to cut out the invalid provisions, so as to leave intact the parts that are valid, and to preserve the general plan of the testator, such a construction will be adopted as will prevent intestacy, either partial or total, as the case may be."

See, also, Davis v. McMahon, 161 App. Div. 458–464, 146 N. Y. Supp. 657, and cases cited.

[3] When the testator made his will, he had one child, the appellant here, then an infant of tender years, and, as the event proved, his only surviving child. The general scheme of the residuary (ninth) clause of the will was that the property should be held by the executors as trustees during the lifetime of the widow, with the proviso that one half of it should be paid over to the child if he lived to the age of 30 years, the other half remaining in the trustees for the benefit of the widow during the remainder of her life. The widow was to enjoy the whole income during the infancy of the appellant; after he arrived at the age of 21 years, he was to receive one-quarter of the income, and after he arrived at the age of 25 years, one-half, the balance in each case still going to the widow; and, finally, when the appellant arrived at the age of 30 years, he was to receive one-half of the fund in possession and control.

We think it quite clear that this created but a single trust term, limited upon the life of the widow, subject to terminate as to one-half of the fund when the child arrived at the age of 30 years, and terminating as to the whole fund on the death of the widow. That this is the true construction of the will is indicated, as we think, by the eleventh subdivision of the ninth clause, wherein the testator attempts to dispose of the remainder after the death of his widow. That subdivision reads as follows:

"(11) Upon the death of my said wife then to hold the remaining moiety of my said estate upon trust, for all or any of my children or child who being sons attain the age of twenty-one years or being a daughter or daughters attain that age or marry if more than one in equal shares, but subject to the trusts and powers hereinafter declared concerning the same."

This provision is clearly invalid, but it serves to illuminate and emphasize the intention of the testator that the first gift to his trustees was to last for the lifetime of his widow and be limited thereby.

[4] There are in effect two separate and successive gifts to the

trustees. The first expires on the death of the widow. The second was intended to go into effect at her death. If this be the proper construction of the will, it is of no consequence that the whole income is not to be paid to the wife during the full term of the trust. The validity of the will depends upon the limitations of the trust estate, and not upon the manner in which the income is disposed of.

"A testator may suspend the absolute power of alienation for a period of two selected lives in being at the creation of the estate, and during that time he may make such disposition of the annual income among as many persons as he sees fit. Thus having created a trust term which must end within the period required by the statute, he may provide that the income shall be paid during that time to A. for life, remainder to B. for life, remainder to C. for life, and so on for as many different lives as he chooses, provided the whole trust term must end with the death of the survivor of the two lives." Schermerhorn v. Cotting, 131 N. Y. 48–58, 29 N. E. 980, 981.

The above quotation exactly fits the case at bar. Here the testator has created a trust term limited upon the life of his wife, and which must end at her death, because upon the happening of that contingency a new trust estate was provided for in the eleventh subdivision of the ninth clause of the will. Within the term of the first trust, differing dispositions are made of the income, depending upon the age of the son. The circumstance that when the son reaches 30 years of age a portion of the fund is to be withdrawn from the trust and paid over to him does not affect the validity of the trust. All that is invalid in the ninth clause is the eleventh subdivision, undertaking to create a new trust in the remainder after the death of the wife. The only effect of deleting this provision will be that the remainder will be undisposed of and pass as if no such provision had been attempted to be made. It is true that the absolute vesting of the estate in the son may be accelerated if the widow should die before he attains the age of 30 years, and to this extent the intention of the testator may be defeated; but it will be much more decisively defeated if the whole ninth clause be declared invalid and the testator held to have died wholly intestate. In Kalish v. Kalish, supra, the Court of Appeals, after an exhaustive review of the authorities in this country and England, approved a construction of a will which lifted bodily out of it an invalid trust provision, leaving the antecedent and subsequent provisions standing, although the effect was to accelerate the ultimate vesting of the estate.

We are therefore of the opinion that the trust provision for the life of Mrs. Ripley was and is valid, and should be upheld, notwithstanding the obvious invalidity of the provision for the disposition of the remainder after her death.

It follows that the judgment appealed from must be affirmed, with costs to plaintiff and the guardian ad litem payable out of the estate.

INGRAHAM, P. J., and McLAUGHLIN, J., concur.

LAUGHLIN, J. (dissenting). This is a suit in equity by the executrix and executor of Harry Dillon Ripley to compel defendant Guaranty Trust Company to account to them for property held in trust under a deed of trust made by their testator on the 27th day of April,

1899. The testator, after making the deed of trust, and on the 30th day of November the same year, married the defendant Alice Louisa Ripley, and the appellant was born as the issue of the marriage on the 23d day of October, 1908. The testator died on the 5th day of February, 1913, leaving a last will and testament, executed on the 9th day of November, 1909, which was duly admitted to probate in the county of New York on the 8th day of May, 1913. The testator by the deed of trust conveyed certain property to the trustees, in trust to pay in their discretion, out of the principal or income, his debts and taxes and all other charges, including the compensation of the trustees, and to apply the surplus income to his use during his life, and upon his death to convey the corpus as it should then exist, together with any unexpended income, to such person or persons as he should by his last will and testament, or by any instrument in the nature thereof, direct and appoint, and in default of such direction or appointment, "or in so far as such direction or appointment, if made by him, may not extend or be effectual, then to such person or persons as would be entitled to take the same according to the now existing laws of the state of New York, if he should die possessed of the same and intestate, and the same were all personal property, in such shares or proportions as they would be entitled to take."

The claim of the plaintiffs is that by his will he appointed the remainder of the trust property to them as his executrix and executor and trustees, to administer as part of his estate, and in trust as therein provided; and they also claim that a decree of the Surrogate's Court made in another proceeding relating to another trust, but to which the appellant and his mother were parties, is res adjudicata that such is the construction of the testator's will. The issues were referred to a referee, who made a report containing findings of fact and recommending an interlocutory judgment, which was entered on the confirmation of the report, sustaining the plaintiffs' claim to the fund; and from the interlocutory judgment, which requires the trust company to account and pay over the fund to the plaintiffs, this appeal was taken.

The appellant, by his answer, as amended on the reference, claims that the attempted execution of the power of appointment was void and ineffectual for any purpose, and that the trustee should account to him for two-thirds and to his mother for one-third of the property. One of the original trustees died and the other resigned. The Morton Trust Company was thereupon duly appointed trustee by the testator, pursuant to a reservation in the deed of trust, and it was merged into the defendant trust company on the 3d day of January, 1910.

The decree of the Surrogate's Court, which the plaintiffs claim, and the referee found, was res adjudicata with respect to the construction of the testator's will, was made on an application by the Bankers' Trust Company, as substituted trustee under the will of Sidney Dillon, the testator's grandfather, who died on the 10th day of June, 1892, and whose will was duly admitted to probate in the county of New York on the 7th day of July that year. By that will the testator was given the life use of a particular share of the estate of

his grandfather, and the corpus of that trust fund was given to the issue, if any, of the testator him surviving, unless otherwise appointed by his last will and testament. After the death of Sidney Dillon, the Bankers' Trust Company applied to the Surrogate's Court for the judicial settlement of its accounts with respect, among other things, to the fund the life use of which was given to the testator, and for its discharge. All parties in interest were duly cited, and the decree was made on the 21st day of November, 1913. On that accounting, the same points with respect to the validity of the exercise of the power of appointment as are now made by the appellant were presented by the trustee; but the guardian of the appellant joined in the claim of the plaintiffs, which was then the same as now, and recommended that the exercise of the power of appointment be sustained, and that the property be awarded to these plaintiffs. The trustee under the testator's deed of trust was not a party to that proceeding, and neither the validity nor the effect of the power of appointment with respect to the trust created by the testator was before the court for adjudication.

The attention of the court, however, was drawn by counsel for the Bankers' Trust Company to the fact that the provision of the testator's will appointing the corpus of the trust fund, of which he was given a life use by the will of his grandfather, was identically the same as that by which he attempted to appoint the remainder of the trust created by himself, and that necessarily the true construction must be the same with respect to both. That is not, however, necessarily so, for with respect to the trust before the Surrogate's Court it was provided that the corpus should go to the issue of the testator unless otherwise appointed by his will, while with respect to this trust the deed of trust provides that it shall go according to our statute of distribution of personal property. This action was then pending, and the attention of the surrogate was also drawn to that fact, and it was argued before him that the issue with respect to the construction of the will of the testator was the same in this action as in the proceeding then before the surrogate. By that decree the Surrogate's Court found that the power of disposition given to the testator by the will of his grandfather over the trust property in the hands of the Bankers' Trust Company was lawfully exercised by the creation of the trust set forth in the ninth article of his will "for the benefit of his wife, said Alice Louisa Ripley, she having been a person in being at the time of the death of Sidney Dillon, and that said trust is valid," and that it was unnecessary for the court in that proceeding "to determine the validity of any of the other dispositions of the trust property aforesaid claimed to have been made by said Harry Dillon Ripley in and by his said will," and that the plaintiffs herein, in their capacity as executrix and executor of the will of Harry Dillon Ripley, "are entitled to all the trust property in the hands of the Bankers' Trust Company, as substituted trustee of the trust created by the will of Sidney Dillon for the benefit of Harry Dillon Ripley during his lifetime, for the purpose of administering the same as part of the estate of Harry Dillon Ripley under his will, subject to

such rights as any persons may have acquired by virtue of the exercise of the power given to Harry Dillon Ripley," with the exception of such part thereof as it might be necessary to reserve in the hands of the Bankers' Trust Company, subject to the further order of the court, for the purposes of paying its commissions and costs and allowances, and for the purpose of indemnifying it with respect to taxes which might thereafter be decided to be due to the state.

The amount of that trust fund, with which the trustee was charged as having in its hands at that time, was $490,151.45; and of that amount consolidated bonds of the city of New York of the par value of $133,000 were left with the trustee subject to the further order of the Surrogate's Court, for the purposes stated. The referee found, and the interlocutory judgment now under review decrees, that the decree of the Surrogate's Court is conclusive in this action upon the appellant, and upon his mother individually and as executrix, and upon the executor, and "that by the will of Harry Dillon Ripley the property over which he had power of disposal or appointment by will under the deed of trust dated April 27, 1899, made by Harry Dillon Ripley to the Knickerbocker Trust Company and another, became subject to administration by his executors as a part of his estate under his will," and was further conclusive that no part of the property over which the testator had power of disposal or appointment by will under the deed of trust "was subjected to the trust for the benefit of his wife set forth in the ninth article of his will, or to any of the other trusts set forth in the ninth and succeeding articles of his will, excepting only such part as might be left in the residue of Harry Dillon Ripley's estate remaining at the conclusion of the administration of his goods, chattels, and credits." The interlocutory judgment further provides, without expressly basing it upon the conclusiveness of the decree of the Surrogate's Court, that with respect to the property involved in this action "the trust of the rest, residue, and remainder of Harry Dillon Ripley's estate for the benefit of his wife, set forth in the ninth article of his will, is valid," and that it is unnecessary for the "court in this action to determine the validity of any of the other trusts of the rest, residue, and remainder of said Ripley's estate set forth in the ninth and succeeding articles of his will." These are the only provisions of the interlocutory judgment brought in question on this appeal.

We are of opinion that the decree of the Surrogate's Court, construing the will of the testator with respect to his exercise of the power of appointment given by the will of his grandfather, is not res adjudicata with respect to the construction of the provisions of the will of the testator, by which he attempted to appoint the trust fund now in question in precisely the same manner and by the same clause of his will as he appointed the fund left in trust by his grandfather. That decree should be regarded in the Surrogate's Court as stare decisis with respect to the construction of the will of the testator; but it could have no other effect on the trust now in question, for manifestly the Surrogate's Court had no authority to adjudicate in that proceeding with respect to this trust fund, and, as already indicated, the true construction is not necessarily the same in each

case, for here the wife would take one-third if the power of appointment has not been effectually exercised, while in the other instance she would in such event take nothing. It became necessary, therefore, to construe the will of the testator in so far as he thereby attempted to exercise the power of appointment reserved to himself by the trust deed, and in so doing we express no opinion with respect to the effect of section 34 of the Personal Property Law (Consol. Laws, c. 41) upon the deed of trust, for no creditor or representative of a creditor of the settlor of the trust is here attempting to impeach it in whole or in part. The claims of both the plaintiffs and the appellant are made upon the assumption that the deed of trust was valid in its entirety; and we do not, by failing to express an opinion thereon, intend to question the validity of the deed of trust.

At the time the will was made, the testator had personal property, aside from the property involved in the trust fund created by him, and in the trust created by his grandfather in part for his benefit, in the United States of the value of about $45,000, and personal and real property in England of the value of £6,610. 3s. 6d., and his personal property in England at the time of his death was of about the same value, and he was fully aware that he owned property of that value, for that valuation, as found by the referee, was placed upon it by himself. It was found by the referee that at the time the will was made the testator was "to some extent in debt," and "was seeking to increase such indebtedness by borrowing money within the United States." Pursuant to an advertisement of the executrix and executor therefor, claims aggregating $39,573.40 were presented against the estate of the testator, and the total value of his personal property excluding from consideration the two trust funds, did not exceed $27,000 at the time of his death. The referee found that the testator valued the trust fund created by the will of his grandfather, over which he had the power of appointment, at an amount exceeding $400,000, and that created by his own deed of trust at an amount exceeding $600,000, and that he spoke of the event of the birth of his son as making him a millionaire, referring to the fact that he had the power of disposition by will of the trust fund under the will of his grandfather in the event of his dying leaving lawful issue.

By the first clause of his will the testator directed the payment of his debts and funeral expenses. By the second clause he bequeathed to his wife the sum of $100,000. By the third clause he devised real estate owned by him in England to his wife for life, and upon her death provided that it should become part of his residuary estate. By the fourth clause he bequeathed a leasehold estate in England to his wife. By the fifth clause he bequeathed his jewelry and personal ornaments to his son, and in the event of his death before attaining the age of 21 years to his wife, and devised and bequeathed to his wife his wearing apparel and certain household furniture and effects, including carriages and horses and stable and garage. By the sixth clause he bequeathed certain other furniture and household furnishings and contents to his trustees for the use of his wife, the same to go into his residuary estate after her death. By the seventh clause

he made certain comparatively small bequests to servants. By the eighth clause he gave an annuity of $1,200 to his father, and £1,000. to a servant; and the final sentence of that clause is as follows:

"I charge that part of my estate which at the date of my death is in the United States primarily with the payment of the before mentioned legacies and annuities."

The first paragraph of the ninth clause is as follows:

"All the rest, residue and remainder of my estate, both real and personal, of whatever nature and wherever situated, including all estate or property over which I may now or hereafter have power of appointment or disposal under the will of the late Sidney Dillon or under deed of trust dated twenty-seventh April one thousand eight hundred and ninety-nine executed by me to the Knickerbocker Trust Company and Sidney Dillon Ripley or otherwise, I give, devise and bequeath to my executors hereinafter named as trustees to have and to hold the same for and upon the following trusts videlicet: (1) To hold, invest and reinvest the same, with full power to sell any property or securities or change the form of any investment, and to invest and reinvest the principal or proceeds in their discretion in properties and securities hereinafter directed. (2) To pay the rents, issues, profits, interest, dividends and other income (all which premises are hereinafter referred to as the said income) of the said trust to my said wife Alice Louisa Ripley during her life, but subject as regards one moiety of the said income to the provisions hereinafter contained in favor of my children and issue."

The further provisions of the ninth article of the will, so far as material to the question presented for decision, give his child or children, on and after attaining the age of 21 years, *"one-fourth part of the said income,"* and on and after attaining the age of 25 years another *one-fourth part of the said income* for life, and further provided that on *any* child attaining the age of 30 years he and the issue of any deceased child, per stirpes, shall take in equal shares one-half the corpus of the residuary estate; and that on the death of the wife, the trustees were to hold the other one-half of the residuary estate in trust to pay the income in equal shares to his sons who attain the age of 21 years, and his daughters who marry or attain that age, and that the share of a child dying before the age of 30 years leaving issue should be held on like trust for such issue if male attaining the age of 21 years, and if female attaining that age or marrying. It is therein further provided that, if a child of the testator should die without attaining a *"vested interest,"* his share should be added to the shares of the others in equal proportions and held on the same trust as the original, and that, if his wife should die leaving none of their issue "who shall live to attain a vested interest in the said premises under the trusts aforesaid," his trustees should pay the income to a designated sister of his wife for life, and that after her death his trustees shall hold all of his estate and the income thereof in trust for such of his two brothers as should be living "at the time of the failure or determination of the prior trusts" and the children then living "of such of" his two brothers as "shall be then dead in equal shares per stirpes."

In deciding whether the will violates the statute against perpetuities by suspending the absolute ownership "for a longer period than during the continuance and until the termination of not more than two

lives in being at the date of the instrument containing such limitation or condition, or, if such instrument be a last will and testament, for not more than two lives in being at the death of the testator" (section 11, Personal Property Law), the will must be read into the deed of trust which created the power of appointment. Fargo v. Squiers, 154 N. Y. 250, 48 N. E. 509; Genet et al. v. Hunt et al., 113 N. Y. 158, 21 N. E. 91. One of the lives to be considered is that of the testator. It is manifest, therefore, that it was not competent for him, by the exercise of the power of appointment by will, to create a trust for a longer period than one life after his death, for it was not competent for him to suspend the power of alienation of the corpus for a longer period than one other life *in being at the date of the deed of trust.* It was, however, competent for him to create a trust for the life of his wife, who was in being at that time, and if he had limited the trust to the period of her life it would have been competent for him to have provided for the division of the income between her and his children during that period; and he could also have provided a *separate and independent* trust for his wife, and if he had so done it could be sustained, even though the other trusts attempted to be created be invalid. See Davis v. McMahon, 161 App. Div. 458, 146 N. Y. Supp. 657, and cases cited. If, however, the trusts cannot be segregated consistently with the entire scheme of the will, all must fall if any are void. Central Trust Co. v. Egleston, 185 N. Y. 23, 77 N. E. 989; Knox v. Jones, 47 N. Y. 389. That, however, he did not intend to do, and to sustain a trust for her, with the other trusts attempted to be created invalid, would defeat the general scheme of the will.

This is not a case where the court should endeavor to sustain the exercise of the power of appointment, on the theory that the primary purpose of the testator was to make provision for his wife; for, if the attempted exercise of the power of appointment be ineffectual, he has by the deed of trust made provision for her, by providing that she shall take the same share as if the fund were all personal property and he died intestate, owning it. She would therefore take under the deed of trust a one-third remainder and the appellant two-thirds. It is manifest that the object of the testator was to create a trust for the benefit of his children quite as much as for the benefit of his wife. If the trust should be sustained in favor of the wife, and the other trusts and disposition of the remainder under the exercise of the power of appointment should be deemed void, then the wife would receive more than the testator intended; for she would take one-third of the remainder under the deed of trust, subject to her own life use of it all, or, at least, of the income of all, with the exception of that which he intended to give to his children who should live to attain the ages of 21 or 25 years. The whole scheme and purpose of the will was to create substitute provisions by the trusts for the benefit of his wife and children in the first instance, and others, and trusts by which one half of the remainder would go to the children or to their issue, and the other half would go to others who would take nothing under the deed of trust. The trust for the sister of his wife was plainly for a third life, and was therefore void. The power of alienation over the

moiety which was not to go to his children or their issue was plainly suspended for more than two lives in being; for it was limited on a trust for himself, for his wife for life, and then for his children and their issue, and if it should not then vest other successive trusts were attempted to be created. The trusts attempted to be created for his children and their children were void, for the reason that they might not have taken effect until after the death of their mother, which would have been the expiration of two lives upon which they were limited, viz., the lives of both father and mother.

These views probably render it unnecessary to consider the contention that the personal representatives of the testator take the fund for the purposes of administration, and that the *remainder only,* after the payment of debts, legacies, and annuities, is subject to the trusts attempted to be created. It appears that the property left by the testator, together with that received by the plaintiffs from the other trusts, is far more than sufficient to pay the debts, legacies, and annuities, and therefore the plaintiffs do not show or even claim that it is necessary to have the fund paid over to them for those purposes, even if they would be entitled to recover it, if necessary for the purposes of administration. Moreover, it is quite plain, I think, that the testator only intended to give this fund to his executor and executrix and trustees *for the purposes of the trusts.* The will is unlike that in Fargo v. Squiers, supra, wherein by the opening clause the testatrix manifested an intention to dispose of both her own property and that over which she had a power of appointment. Here there is no attempt to dispose of this fund, excepting in the ninth article of the will, which follows the provisions with respect to debts, legacies, and annuities; and the case therefore falls within the rule, stated in Farmers' Loan & Trust Co. v. Kip, 192 N. Y. 266, 85 N. E. 59, that the testator's personal estate, not otherwise disposed of or exempted by his will, "constitutes the natural primary fund for the payment of legacies as well as of debts," which "is controlling unless the will, either in express terms or by necessary implication, discloses a different intention on the part of the testator." It is unnecessary to consider whether this trust fund is covered by the eighth article of the will, by which the testator charges his property in the United States with the payment of the legacies and annuities; for, if so, the attempted exercise of the power of appointment being void, that would at most merely make the legacies and annuities a charge on this fund, to be enforced by appropriate action, but would not entitle the plaintiffs to recover the entire fund for the purposes of general administration, as is sought here.

As already stated, the plaintiffs by their complaint predicate their right to recover on the will, and argue in support of the trust for the wife. Their counsel, however, toward the end of his brief, seems to take the inconsistent position that the deed of trust, in so far as it purports to dispose of the remainder, either by the exercise of a power of appointment or without, was void, and that the title remained in the testator until his death, and then passed to the plaintiffs. I am of opinion that the deed of trust was valid in toto. It is not necessary to decide whether the testator could have revoked it, for he made no

attempt to do so, and upon his death the appellant and his mother, on the failure of the testator effectually to exercise the power of appointment, took a vested remainder in possession.   Genet et al. v. Hunt et al., supra; Crackanthorpe v. Sickles, 156 App. Div. 753, 141 N. Y. Supp. 370; Newton v. Hunt, 134 App. Div. 325, 119 N. Y. Supp. 3. See, also, Whittemore v. Equitable Trust Co., 162 App. Div. 607, 147 N. Y. Supp. 1058.

It follows that the interlocutory judgment should be reversed, with costs to all parties payable out of the fund, and final judgment should be entered requiring the trust company to account to the appellant and to his mother under the deed of trust.

DOWLING, J., concurs.