HENRY WHITTEMORE and Others, Plaintiffs, *v.* THE EQUITABLE
TRUST COMPANY OF NEW YORK, Defendant.

First Department, June 8, 1928.

Trusts — revocation — three of plaintiffs transferred personal property to
defendant in trust, under instrument which provided for payment of
income to other plaintiff for life and after her death to her husband
for life — instrument then provided that upon death of surviving bene-
ficiary, principal should be paid to three settlors in equal shares, and if
any should not be living, his share to be paid as directed by his will,
or, in default of will, to be paid as if he had died intestate owning share
— three settlors and living beneficiary have revoked trust — said persons
are only persons interested, within meaning of Personal Property Law,
§ 23 — revocation is effective.

Three of the plaintiffs executed and delivered to the defendant, as trustee, an
instrument transferring to them certain personal property in trust.  The trust
instrument provided that the defendant should pay the income of the property
transferred to the other plaintiff for her life, and after her death to her husband
for life.  It also provided that upon the death of the surviving beneficiary, the
principal of the trust should be paid in equal shares to the three settlors, provided,
however, that if any of them should not then be living, his or her share should
be paid as directed by his or her will, or in default of appointment, to such person
or persons and in such shares " as the same would have been distributable if
such deceased settlor had been the owner thereof at the time of his or her death
and had died intestate."  The surviving beneficiary and the three settlors have
revoked the trust by a written instrument, directing the trustee, the defendant,
to transfer the principal to the settlors.

The revocation is effective, since the surviving beneficiary and the three settlors
are the only persons beneficially interested in the trust, within the meaning of
section 23 of the Personal Property Law.

The provision of the instrument for the distribution of a share of the principal in
case one of the settlors should die without making appointment by will, did not
create any interest in the next of kin of any settlor, so as to require a consent
by them to the revocation of the trust.  Under that provision in the trust
instrument the next of kin take by descent and not by purchase.

SUBMISSION of a controversy upon an agreed statement of facts
pursuant to section 546 of the Civil Practice Act.

*William J. Rapp,* for the plaintiffs.

*Harrison Tweed* of counsel [*Murray, Aldrich & Roberts,* attorneys],
for the defendant.

FINCH, J.  This is a submitted controversy.  A summary of the
facts stated in the submission briefly follows:  On December 27,
1921, Elizabeth L. Wilson, Carolyn W. Quarles and Henry Whitte-
more, Jr., executed and delivered to the Equitable Trust Company

of New York, as trustee, a trust indenture dealing with personal property. The indenture provided that the trustee should hold the property and pay the income to Carolyn G. Whittemore for her life and, after her death, to her husband, Henry Whittemore, for his life. Upon the death of the survivor the principal of the trust was to be paid to the three settlors in equal shares, provided that if any of them should not then be living his or her share of the principal should be paid over as he or she, by last will and testament, might appoint, or " in default of such appointment, to such person or persons, and in such shares, interests and proportions, as the same would have been distributable if such deceased settlor had been the owner thereof at the time of his or her death and had died intestate." Mrs. Whittemore is still alive but the second life estate has terminated by the death of Henry Whittemore. The settlors wish to revoke the trust and to become repossessed of the principal. The three settlors and Carolyn G. Whittemore have executed a written instrument in due form directing the trustee to transfer the principal of the trust to the settlors.

The question involved is whether the trust may now be terminated in accordance with the request within the meaning of section 23 of the Personal Property Law (as added by Laws of 1909, chap. 247), which is as follows: " Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof." It is clear that the trust may be so terminated, since the plaintiffs are the only persons beneficially interested therein. (*Whittemore* v. *Equitable Trust Co.*, 162 App. Div. 607; *Cruger* v. *Union Trust Co.*, 173 id. 797.) The defendant questions the correctness of these decisions, and contends in effect that they have been overruled by *Cazzani* v. *Title Guarantee & Trust Co.* (175 App. Div. 369; affd., 220 N. Y. 683). This latter case, however, dealt with a specific gift over to certain designated persons, and was not an attempted gift to the next of kin of the donor upon his death. Here the question is not whether there is a vested or contingent remainder in certain persons, but whether there is any remainder at all. If the principle underlying the decisions in *Whittemore* v. *Equitable Trust Co.* and *Cruger* v. *Union Trust Co.* (*supra*) be considered in the light of the background out of which the principle arose, it is at once apparent that the principle was applicable to said cases, as it is to the case at bar. This principle is that where a grantor attempts to create by conveyance a gift over to his heirs or next of kin, the latter

take by descent and not by purchase. It is a principle which has existed in the common law from the earliest times. " A man cannot either by conveyance at the common law, by limitation of uses, or devise, make his right heir a purchaser." (See *Doctor v. Hughes*, 225 N. Y. 305, 310, citing English cases.) " If a man make a gift in taile, or a lease for life, the remainder to his own right heirs, this remainder is void, and he hath the reversion in him; for the ancestor during his life beareth in his body all his heirs, and, therefore, it is truly said that *hæres est pars antecessoris*." (Co. Litt. 22b.) An attempted remainder to the heirs of the grantor is thus equivalent to the reservation of a reversion to the grantor himself. The same principle resulted in the ruling in *Shelley's Case*, which has been abrogated in this State by statute, but that does not affect the application of the principle in the case at bar, which is a case involving the gift of a remainder to the next of kin of the grantor, as distinguished from a gift to the heirs of the beneficiary of a life estate. In the latter, since the rule in *Shelley's Case* has been abrogated, the heirs take a vested though defeasible estate; in the former case no estate outside that of the grantor and trustee is created. As was said by Judge CARDOZO (now Chief Judge) in *Doctor* v. *Hughes* (225 N. Y. 305, 309), a case involving an express trust with remainder over to the heirs of the grantor: " The direction to the trustee is the superfluous expression of a duty imposed by law. ' Where an express trust is created, every legal estate and interest not embraced in the trust, and not otherwise disposed of, shall remain in or revert to, the person creating the trust or his heirs ' (Real Prop. Law, sec. 102; Consol. Laws, chap. 50). What is left is not a remainder (Real Prop. Law, sec. 38), but a reversion (Real Prop. Law, sec. 39). To such a situation neither the rule in *Shelley's Case* (1 Coke Rep. 104), nor the statute abrogating the rule (Real Prop. Law, sec. 54), applies. The heirs mentioned in this deed are not ' the heirs of a person to whom a life estate in the same premises is given ' (Real Prop. Law, sec. 54). The life estate belongs to the trustee. The heirs are the heirs of the grantor. There is no doubt that a gift to A for life with remainder to A's heirs, gives to such heirs a vested, though defeasible, estate (*Moore* v. *Littel*, 41 N. Y. 66; *Clowe* v. *Seavey*, 208 N. Y. 496, 502). But here the question is not whether a remainder is contingent or vested. The question is whether there is any remainder at all. In the solution of that problem, the distinction is vital between gifts to the heirs of the holder of a particular estate, and gifts or attempted gifts to the heirs of the grantor."

The defendant also urges that the case of *Court* v. *Bankers' Trust Co.* (160 N. Y. Supp. 477; affd., 172 App. Div. 955; affd., 221 N. Y.

608) is a direct authority in favor of the contention which it is urging, namely, that the next of kin take by purchase under the trust deed and not by descent. The well-considered opinion at Special Term in that case, however, carefully pointed out that it was distinguishable from *Whittemore* v. *Equitable Trust Co.* (162 App. Div. 607), since in the case of *Court* v. *Bankers' Trust Co.* (*supra*) the grantor changed the distribution of the estate from that according to law by providing that the husband of the settlor, William B. Court, should be excluded from any participation therein and that, as she had no descendants, her personal property would by law upon her death intestate become the property of her husband subject to the payment of her debts. (*Robins* v. *McClure*, 100 N. Y. 328; *Matter of Russell*, 168 id. 169.)* *Court* v. *Bankers' Trust Co.* (*supra*), therefore, is an authority in favor of the plaintiffs rather than the defendant. The defendant also urges that there is a distinction in the case at bar, claiming that if the language of the trust deed had been to pay over the trust estate to the administrator of a deceased person, then there would have been a reversion in the settlors, but that in the present case the language means that the estate shall be turned over to the persons who are the statutory distributees of that person. This, however, begs the question which is before us, namely, what was the intention of the settlors of the estate, and is the language of the trust deed sufficient to show an intention to transform into a remainder what would ordinarily be a reversion? In other words, it must appear clear from an inspection of this trust deed that it was the intention of the settlors in default of his or her appointment to give this property otherwise than the Statute of Distributions would give the same. It seems to us plain that from the language used, the intention of the settlors was that in default of appointment, the property would go as the law would give it, namely, to the next of kin. This is the fair import of the language used. In those cases where a different result has been reached an examination of the language evidences an intent to have the property pass in default of appointment otherwise than according to the law regarding descent or distribution. In reaching such conclusion we are not at liberty to ignore the fact that the living, in the absence of a clearly expressed intention to the contrary, mean to keep control of their property during life and not to forego this control by providing that in default of appointment it shall go as a vested remainder, though defeasible, to their next of kin and thus be beyond their power to retain complete control. The settlors could

---

* See Laws of 1919, chap. 295, amdg. Decedent Estate Law, § 100.— [REP.

undoubtedly have expressed an intention in the trust deed as contended for by the defendant, but in that event they should have chosen language more clearly showing their desire to bring about a result out of line with ordinary human understanding. The further language of Judge CARDOZO (now Chief Judge) in his able opinion in *Doctor* v. *Hughes* (*supra*) aptly fits the case at bar: " There may be times, therefore, when a reference to the heirs of the grantor will be regarded as the gift of a remainder, and will vest title in the heirs presumptive as upon a gift to the heirs of others [citing cases]. Even at common law, a distinction was taken between grants to the heirs as such, and grants where the reference to heirs was a mere *descriptio personarum* [citing cases]. But at least the ancient rule survives to this extent, that to transform into a remainder what would ordinarily be a reversion, the intention to work the transformation must be clearly expressed. Here there is no clear expression of such a purpose. * * * The grantor instructs the trustee, at the end of the life estate, to convey the land (if unsold) to their heirs, and if there has been a sale to pay the proceeds to the heirs. The more appropriate direction, if the grantor retained a reversion, would have been for payment of the proceeds of any sale to the executors or next of kin * * *. But the words heirs and next of kin are often employed as interchangeable. * * * Nothing in the surrounding circumstances suggests a purpose to vary the course of descent or distribution as it would be regulated by law. If that is so, the courts are not to be controlled by mere inaccuracies of expression * * *. There is no adequate disclosure of a purpose in the mind of this grantor to vest his presumptive heirs with rights which it would be beyond his power to defeat. No one is heir to the living; and seldom do the living mean to forego the power of disposition during life by the direction that upon death there shall be a transfer to their heirs."

There are, therefore, no persons now existing, save the plaintiffs, who have any rights under the deed of trust. After the death of the remaining life beneficiary there never can be any such persons other than the appointees of the settlors except by the voluntary act of the settlors, and the settlors have united in this request for the revocation of the trust. In default of such appointment the property is to go to the next of kin of the settlors, which leaves the reversion and thus the whole estate in those who are seeking the revocation of the trust.

It follows that the trust in question has been revoked, and the plaintiffs are entitled to judgment awarding them immediate possession of the property comprising·the principal of the trust,

after the deduction of all expenses and charges of administration, without costs to either party.

DOWLING, P. J., McAVOY, MARTIN and PROSKAUER, JJ., concur.

Judgment directed for plaintiffs as indicated in opinion, without costs.    Settle order on notice.